## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| DWAYNE WILLIAMS, | ) | Case No. 1:22-cv-01352-DAR |
| | ) | |
| Petitioner, | ) | JUDGE DAVID A. RUIZ |
| | ) | UNITED STATE DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| KENNETH BLACK, WARDEN, | ) | JENNIFER DOWDELL |
| | ) | ARMSTRONG |
| Respondent. | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.    INTRODUCTION

Petitioner, Dwayne Williams ("Mr. Williams"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Williams is serving a 37-year sentence for aggravated burglary, aggravated robbery, felonious assault, and complicity to commit theft.

Mr. Williams asserts three grounds for relief. Respondent, Warden Kenneth Black ("Warden"), filed an answer/return of writ on October 12, 2022. (ECF No. 5). Mr. Williams filed a traverse on November 9, 2022. (ECF No. 6). This matter was referred to me on September 2, 2022 under Local Rule 72.2 to prepare a report and recommendation on Mr. Williams' petition. (*See* ECF non-document entry dated September 2, 2022). For the reasons set forth below, I recommend that Mr. Williams' petition be DISMISSED. I further recommend that this Court not grant Mr. Williams a certificate of appealability.

## II.    RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by

clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Sixth District summarized the facts as follows:

{¶ 3} On June 1, 2016, at about 2:00 a.m., two men entered the home of D.C. and held him and four others at gunpoint for approximately 20 minutes while the home was burglarized. The men had masks on that covered the lower half of their faces. The two men obtained cash and a cellular phone from the victims. When the suspects demanded more money, D.C. indicated there was additional money in another apartment. When the men and D.C. got onto the back porch, D.C. was able to jump back into the house and quickly close the door, leaving the men outside. D.C. then contacted the police.

{¶ 4} When the police arrived, D.C. was deeply upset after the robbery and was unable to make a statement to the police. The other victims, including D.C.'s wife, were able to make statements to the police about what they witnessed and gave a description of the suspects. Two days later, Sandusky Police Detective Ken Nixon returned to the home and interviewed D.C. and his wife. D.C. then gave a detailed description of the night, the suspects, and the weapons used in the crime.

{¶ 5} At that time, D.C. indicated that he believed appellant was one of the men who held him at gunpoint during the robbery. D.C. stated that he knew appellant from a party on the Fourth of July. He stated that he knew appellant's voice from this party as well. D.C. also told the detective that he was told by a third party that appellant may have been involved with the crime. D.C. then showed the detective a photograph from Facebook and stated he believed the photograph showed both men who burglarized his home.

{¶ 6} Detective Nixon did not indicate to D.C. that the man in the photograph was appellant or that the detective suspected appellant in a separate robbery. Nixon then had a photo lineup created and administered to D.C. by a blind administrator. The photo used in the lineup was not the same photo that was shown by the detective on Facebook. The photo lineup was created by a computer program called the Ohio Law Enforcement Gateway and placed five photos of men of similar characteristics of appellant into the photo array. After viewing the photo lineup, D.C. indicated that he was positive appellant was one of the men in the photo lineup. D.C.'s wife identified the other suspect in a separate lineup.

(ECF No. 5-1, Exhibit 15); *State v. Williams*, No. E-18-024, 2019 WL 6816939, 2019-Ohio-5144 (6th Dist. Dec. 13, 2019).

### III.  PROCEDURAL HISTORY

#### A.  <u>State Court Conviction</u>

On August 11, 2016, Mr. Williams was indicted in the Erie County Court of Common Pleas on the following offenses: (1) five first-degree felony counts of aggravated burglary in violation of R.C. § 2911.11(A)(2); (2) five first-degree felony counts of aggravated robbery in violation of R.C. § 2911.01(A)(1); (3) five second-degree felony counts of felonious assault in violation of R.C. § 2903.11(A)(2); and (4) three first-degree misdemeanor counts of complicity to commit theft in violation of R.C. § 2923.03(A)(2). (ECF No. 5-1, Exhibit 1). The aggravated burglary, aggravated robbery, and felonious assault charges also carried firearm specifications. *Id*. On February 15, 2017, Mr. Williams pled not guilty to all charges. (ECF No. 5-1, Exhibit 2).

On July 5, 2017, Mr. Williams, through counsel, filed a motion to suppress an identification one of the victims made of Mr. Williams from a photo array, arguing that the photo array was suggestive and that the resulting identification was unreliable. (ECF No. 5-1, Exhibit 3). Mr. Williams also moved to suppress any evidence obtained through a search of his cell phone. *Id*. On August 2, 2017, the trial court denied the motion to suppress. (ECF No. 5-1, Exhibit 5).

The case proceeded to trial. On March 1, 2018, the jury convicted Mr. Williams on all counts. (ECF No. 5-1, Exhibit 8).  On April 5, 2018, the trial court sentenced Mr. Williams to a total of 37 years in prison. (ECF No. 5-1, Exhibit 9).

#### B.  <u>Direct Appeal</u>

On April 30, 2018, Mr. Williams, through counsel, timely filed a notice of appeal to the Sixth District Court of Appeals. (ECF No. 5-1, Exhibit 10). On December 26, 2018, Mr. Williams' counsel filed a motion to withdraw because Mr. Williams had retained private

counsel. (ECF No. 5-1, Exhibit 11). On December 31, 2018, the Sixth Appellate District granted the motion. (ECF No. 5-1, Exhibit 12).

On June 5, 2019, Mr. Williams filed his appellate brief, raising the following assignment of error:

> 1. The trial court erred to the prejudice of Mr. Williams when it denied his motion to suppress, and renewed motion to suppress, the pretrial identification of Mr. Williams by Demetrick Clinton.

(ECF 5-1, Exhibit 13).

On December 13, 2019, the Sixth Appellate District affirmed Mr. Williams' conviction. (ECF No. 5-1, Exhibit 15). On July 21, 2020, Mr. Williams, through new appellate counsel, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 5-1, Exhibit 16). Mr. Williams also filed a motion for leave to file his appeal out of time, alleging that his prior appellate counsel failed to inform him of the Sixth Appellate District's decision. (ECF No. 5-1, Exhibit 17). On August 4, 2020, the Ohio Supreme Court denied Mr. Williams' motion to file his appeal out of time and dismissed his appeal as untimely. (ECF No. 5-1, Exhibit 18). On August 12, 2020, Mr. Williams filed a motion for reconsideration. (ECF No. 5-1, Exhibit 19). On October 13, 2020, the Ohio Supreme Court denied Mr. Williams' motion for reconsideration. (ECF No. 5-1, Exhibit 20).

## C. Rule 26(B) Application to Reopen Appeal

On October 13, 2020, Mr. Williams, through counsel, filed an application in the Sixth Appellate District to reopen his appeal pursuant to Ohio Appellate Rule 26(B). (ECF No. 5-1, Exhibit 21). In his application, Mr. Williams argued that he was denied the effective assistance of counsel on his direct appeal because his counsel failed to raise three allegedly colorable arguments: (1) the trial court erred in allowing testimony regarding Mr. Williams' location at the time of the robbery as derived from cell tower data without proper foundation

4

or expert testimony; (2) Mr. Williams' convictions were against the manifest weight of the evidence; and (3) the evidence was insufficient to support Mr. Williams' convictions. *Id*. On December 7, 2021, the Sixth Appellate District denied Mr. Williams' application to reopen as untimely because Mr. Williams had not filed it within 90 days of the journalization of the Sixth Appellate District's decision and because Mr. Williams had not shown good cause for filing at a later time, as required by Ohio Appellate Rule 26(B)(1). (ECF No. 5-1, Exhibit 23).

On January 21, 2022, Mr. Williams, through counsel, filed a notice of appeal to the Ohio Supreme Court from the Sixth Appellate District's denial of his Rule 26(B) application. (ECF No. 5-1, Exhibit 24). In his memorandum in support of jurisdiction, Mr. Williams raised the following propositions of law:

1. The admission of unfounded scientific testimony by a non-expert results in statutory and constitutional violations.

2. A conviction unsupported by sufficient evidence results in a violation of an accused's right to due process guaranteed by the Fourteenth Amendment to the United States Constitution.

(ECF No. 5-1, Exhibit 25). On March 29, 2022, the Ohio Supreme Court declined to accept jurisdiction over the appeal. (ECF No. 5-1, Exhibit 27).

**D. Federal Habeas Action**

On August 1, 2022, Mr. Williams, through counsel, filed his 28 U.S.C. § 2254 habeas petition. (ECF No. 1). Mr. Williams' habeas petition raises the following grounds for relief:

1. The admission of unfounded scientific evidence by a non-expert witness resulted in a violation of Petitioner's Fourteenth Amendment right to due process.

2. The conviction was based on legally insufficient evidence which resulted in a violation of Petitioner's right to due process.

3. Petitioner was denied the effective assistance of counsel.

*Id*.

5

The Warden filed an answer/return of writ on October 12, 2022. (ECF No. 5). Mr. Williams filed a traverse on November 9, 2022. (ECF No. 6).

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A. Jurisdiction

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Erie County Court of Common Pleas sentenced Mr. Williams, and the Court takes judicial notice that Erie County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Williams' § 2254 petition.

### B. Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require

pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every state of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

Procedural default, however, can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

**C. Cognizable Federal Claim**

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the

ground that he is in custody in violation of the Constitution or laws or treaties of the United

States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue

at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18,

2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in

application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v.

Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th

Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province

of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does

not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610,

614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead,

"federal courts must defer to a state court's interpretation of its own rules of evidence and

procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine

of exhaustion requires that a claim be presented to the state courts under the same theory in

which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir.

1998).

### D. **AEDPA Standard of Review**

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act,

Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless the adjudication of the claim
> –

>> (1) resulted in a decision that was contrary to, or involved an unreasonable
>> application of, clearly established Federal law, as determined by the
>> Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's

decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V. ANALYSIS

Mr. Williams asserts three grounds for relief. The Warden responds that Mr. Williams' petition should be dismissed in its entirety because his claims are barred by the

applicate statute of limitations and because he has procedurally defaulted on them. The Warden alternatively argues that Mr. Williams' claims fail on the merits. Because I agree with the Warden that Mr. Williams' claims are time-barred and procedurally defaulted, I do not reach the merits of his petition.

### A. <u>Statute of Limitations</u>

AEDPA imposes a one-year statute of limitations upon all applications seeking a writ of habeas corpus. *See* 28 U.S.C. § 2244(d)(1). Although the statute of limitations is "not jurisdictional," it "effectively bars relief absent a showing that the petitioner's untimeliness should be excused based on equitable tolling and actual innocence." *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009). The one-year limitations period begins to run from the latest of four dates:

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Cases become final for purposes of § 2244(d)(1)(A) when the time to file a direct appeal has expired, including the time to file a petition for a writ of certiorari to the United States Supreme Court. *See Lawrence v. Florida*, 549 U.S. 327, 333 (2007).

The Sixth Appellate District affirmed Mr. Williams' conviction on December 13, 2019. (ECF No. 5-1, Exhibit 15). Mr. Williams had 45 days, or until January 27, 2020, to file an appeal to the Ohio Supreme Court. *See* S.Ct. Prac. R. 7.01(A)(1)(a)(1). Mr. Williams did

not file a notice of appeal by that date, so the AEDPA statute of limitations began running the next day, January 28, 2020. *See* Fed. R. Civ. P. 6(a)(1).

Mr. Williams filed a notice of appeal in the Ohio Supreme Court on July 21, 2020, 175 days after the AEDPA limitations period began, along with a motion for leave to file an out of time appeal. (ECF No. 5-1, Exhibits 16-17). The Warden does not dispute that Mr. Williams' belated appeal to the Ohio Supreme Court tolled the statute of limitations. *See Board v. Bradshaw*, 805 F.3d 769, 773 (6th Cir. 2015) ("This Circuit has repeatedly found that although an unsuccessful motion for leave to file a delayed appeal cannot restart the AEDPA limitations period, it may toll the limitations period while it is pending.").

The Ohio Supreme Court denied Mr. Williams' motion and dismissed his appeal on August 4, 2020. (ECF No. 5-1, Exhibit 18). Mr. Williams filed a motion for reconsideration, which the Ohio Supreme Court denied on October 13, 2020. (ECF No. 5-1, Exhibits 19-20). At that point, Mr. Williams had 190 days remaining on the one-year limitations period, or until April 21, 2021, to file his habeas petition. However, Mr. Williams did not file his petition until August 1, 2022, more than a year after the statute of limitations expired. Mr. Williams' petition is thus untimely unless some form of tolling applies. Mr. Williams argues both that statutory and equitable tolling operate to save his claim, and I will consider each form of tolling in turn.

### *1. Statutory Tolling*

§ 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Accordingly, "[t]he one-year period of limitations is tolled" while a properly filed application state post-conviction or other collateral review is pending. *Keeling*

*v. Warden, Lebanon Corr. Inst*., 673 F.3d 452, 459 (6th Cir. 2012)) (quoting 28 U.S.C. § 2244(d)(2)).

Mr. Williams argues that his petition is timely because the statute of limitations was tolled under § 2244(d)(2) while his Rule 26(B) application to reopen his appeal was pending. It is true that a Rule 26(B) application is a proper application for post-conviction or other collateral review under § 2244(d)(2) and can toll AEDPA's statute of limitations. *See Lopez v. Wilson*, 426 F.3d 339, 351 (6th Cir. 2005) ("a Rule 26(B) application to reopen is part of the collateral, postconviction process rather than direct review"); *Jackson v. Bradshaw*, No. 1:16 CV 1852, 2017 WL 3475517, at *9 (N.D. Ohio June 22, 2017), *report and recommendation adopted*, 2017 WL 3456322 (N.D. Ohio Aug. 11, 2017) ("A Rule 26(B) application to reopen is a collateral proceeding which can toll AEDPA's statute of limitations under § 2244(d)(2)").

However, only a "properly filed" Rule 26(B) application serves to toll the statute of limitations, and an untimely application is not "properly filed." *See Jackson*, 2017 WL 3475517 at *9 ("Jackson's reopening application . . . was untimely. Because of this, it was not 'properly filed' and did not toll the AEDPA statute of limitations under § 2244(d)(2)"); *Kimble v. Gansheimer*, No. 4:08CV01048, 2009 WL 4676959, at *14 (N.D. Ohio Dec. 4, 2009) ("The warden correctly argues that when Kimble filed a Ohio R.App. P. 26(B) application to reopen appeal . . . there was no tolling under § 2244(d)(2) because that application was dismissed . . . as untimely."); *Davenport v. Fender*, No. 1:20-CV-0561, 2023 WL 1785492, at *9 (N.D. Ohio Jan. 5, 2023), *report and recommendation adopted*, 2023 WL 1782121 (N.D. Ohio Feb. 6, 2023) ("Because Mr. Davenport's 26(B) application was not properly filed within ninety days and did not fit into the rule's 'good cause' exception,

13

statutory tolling under section 2244(d)(2) cannot be applied to this period.")).

Here, the Sixth Appellate District denied Mr. Williams' Rule 26(B) application on timeliness grounds, expressly holding that he had failed to file it within the required 90 days and that he had not shown good cause for his failure to file within the 90-day window. Mr. William's untimely Rule 26(B) application did not toll the AEDPA statute of limitations, and he cannot rely on statutory tolling to save his claims.

### 2. *Equitable Tolling*

Mr. Williams also argues that the statute of limitations should be equitably tolled because his untimely habeas petition was the result of his appellate counsel's failure to inform him that the Sixth Appellate District had decided his appeal and affirmed his convictions. Mr. Williams' argument is not well-taken.

Because AEDPA's one-year statute of limitations is not jurisdictional, a court may still entertain an untimely petition if the petitioner is entitled to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). If a petitioner seeks equitable tolling, he must show that: (1) he pursued his rights diligently; and (2) some extraordinary circumstance stood in his way and prevented timely filing. *See Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010) (citing *Holland*, 560 U.S. at 649). "Equitable tolling is granted sparingly and is evaluated on a case-by-case basis, with the petitioner retaining the 'ultimate burden of persuading the court that he or she is entitled to equitable tolling.'" *Keeling*, 673 F.3d at 462 (quoting *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011)). There is also an equitable exception to the one-year limitations period when a petitioner makes a "convincing showing of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).

Mr. Williams argues that he is entitled to equitable tolling because his appellate counsel failed to notify him that the Sixth Appellate District had affirmed his conviction. He

asserts that he did not become aware of the Sixth Appellate District's decision until his mother checked the docket online, at which point his deadline to appeal to the Ohio Supreme Court had already expired.

"Attorney neglect or error does not generally give rise to equitable tolling." *Patterson v. Lafler*, 455 F. App'x 606, 609 (6th Cir. 2012) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). "However, the Supreme Court has held that a 'serious instance[] of attorney misconduct' may rise to the level of an extraordinary circumstance necessary to justify equitable tolling." *Id.* at 609-10 (quoting *Holland*, 560 U.S. at 652). The Sixth Circuit has similarly held that "[b]oth ineffective assistance of counsel and 'a substantial, involuntary delay in learning about the status of their appeals' may constitute extraordinary circumstances sufficient to warrant relief.'" *Keeling*, 673 F.3d at 462 (quoting *Robinson v. Easterling*, 424 F. App'x 439, 442 (6th Cir. 2011)).

Counsel's errors will give rise to equitable tolling, however, only if the circumstances were beyond the petitioner's control and the petitioner could not have avoided them with reasonable diligence. *Id.* Thus, "[t]he Sixth Circuit has declined to apply equitable tolling where the petitioner alleged that the state court and his attorney failed to inform him that a decision had been rendered on his appeal where he sat on his rights and failed to diligently monitor the status of his appeal." *Perkins v. Turner*, No. 3:16CV627, 2016 WL 7364707, at *9 (N.D. Ohio Nov. 3, 2016), *report and recommendation adopted*, 2016 WL 7336531 (N.D. Ohio Dec. 19, 2016) (citing *Keeling*, 673 F.3d at 462); *see also Robinson*, 424 F. App'x at 443 ("petitioners who receive delayed notification of a state court judgment due to clerical or attorney errors may not seek equitable tolling if they 'passively await decision'") (quoting *Miller v. Collins*, 305 F.3d 491, 496 (6th Cir. 2002)).

15

Even assuming that the errors of Mr. Williams' counsel rose to a level that could warrant equitable tolling, Mr. Williams has not demonstrated that he acted diligently to protect his rights. He asserts that he did not learn of the Sixth Appellate District's decision until his mother noticed it on the court docket. However, he has not established that he was actively attempting to monitor the status of his appeal or that he contacted his appellate counsel or the court to inquire about the status of his appeal. Nor has he stated when his mother learned of the Sixth Appellate District's decision or that he acted expeditiously to protect his rights once he became award that his convictions had been affirmed. Courts have held that equitable tolling is unwarranted in similar circumstances. *See Patterson*, 455 F. App'x at 611 (holding that petitioner was not reasonably diligent where petitioner "did not make diligent and consistent efforts to contact his attorney about deadlines only to be consistently ignored by the attorney"); *Weese v. Sloane*, No. 1:15cv122, 2016 WL 626494, at *9 (N.D. Ohio Jan. 21, 2016), *report and recommendation adopted*, 2016 WL 614001 (N.D. Ohio Feb. 16, 2016) (holding that petitioner was not reasonably diligent where petitioner did not file Rule 26(B) application until two years after Ohio Supreme Court's decision and "offer[ed] no explanation for failing to monitor the status of his appeal through other means, such as direct contact with the state court clerks' office.").

Nor has Mr. Williams explained why he waited nearly two years to file his habeas petition after the Ohio Supreme Court denied his motion to file an out of time appeal. *See Glenn v. Coleman*, No. 3:13-cv-01090, 2014 WL 4983661, at *16 (N.D. Ohio Oct. 6, 2014) ("even assuming Glenn's failure to diligently monitor his appeal . . . can be excused due to his appellate counsel's alleged ineffectiveness, Glenn offers no justification whatsoever for failing to timely file his habeas petition once his Motion for Delayed Appeal was denied").

While I recognize that Mr. Williams was pursuing his Rule 26(B) application for a portion of that time, at least one court has rejected the argument that a petitioner's decision to pursue an untimely Rule 26(B) application excuses a failure to promptly file a federal habeas petition. *See Perkins*, 2016 WL 736707 at *9 (holding that petitioner failed to act with sufficient diligence where petitioner waited 45 days after Ohio appellate court's decision to file motion for delayed appeal and then "waited another seven months before he filed his first federal habeas corpus petition, opting instead to file a Rule 26(B) petition in the Ohio appellate court that did not comply with the Ohio Rules of Appellate Procedure"). Finally, Mr. Williams has not explained why he waited more than four months to file his habeas petition after the Ohio Supreme Court declined to accept jurisdiction over his appeal from the denial off his Rule 26(B) application. Accordingly, I conclude that Mr. Williams has not met his burden of demonstrating that equitable tolling is warranted, and I recommend that the Court dismiss Mr. Williams' petition as time-barred.

### B.  Procedural Default

Alternatively, I recommend that the Court dismiss Mr. Williams' claims as procedurally defaulted because he failed to raise them at all levels of the state court review process while state court review procedures were available to him.

As noted above, procedural default occurs where a prisoner fails to:  (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See Wainwright*, 433 U.S. at 80, 84-87; *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. Here, as the Warden correctly argues, the Ohio courts never reached the merits of any of Mr. Williams' three grounds for relief because he failed to timely raise them on appeal.

In his initial direct appeal to the Sixth Appellate District, Mr. Williams asserted a single assignment of error, arguing that the trial court should have excluded an allegedly unreliable identification that one of the victims made from a photo array. (ECF No. 5-1, Exhibit 13). He did not raise any of the grounds that he now asserts in his habeas petition. After the Sixth Appellate District affirmed his conviction, Mr. Williams failed to timely file an appeal to the Ohio Supreme Court, which denied his motion for leave to file an out of time appeal. (ECF No. 5-1, Exhibit 18).

Mr. Williams first raised the grounds he now asserts in his habeas petition in his Rule 26(B) application, in which he asserted both that: (1) the trial court erred in admitting the introduction of testimony regarding his location at the time of the robbery derived from cell phone tower data; and (2) his conviction was not supported by the sufficiency of the evidence. (ECF No. 5-1, Exhibit 21).

While the assignments of error mirror the grounds for relief Mr. Williams asserted in his habeas petition, the Sixth Appellate District declined to reach the merits of them, instead holding that Mr. Williams failed to timely file his Rule 26(B) application and had not demonstrated good cause for his failure to do so. (ECF No. 5-1, Exhibit 23). The Ohio Supreme Court then declined to accept jurisdiction over Mr. Williams' appeal, leaving the Sixth Appellate District's ruling as the last explained state court judgment on both grounds.

The same is true for Mr. Williams' third ground for relief, which asserts that he received the ineffective assistance of appellate counsel. "In Ohio, the vehicle for raising an ineffective assistance of appellate counsel claim is an application under Rule 26(B)." *Landrum v. Mitchell*, 625 F.3d 905, 934 (6th Cir. 2010). Mr. Williams did not include a standalone ineffective assistance of appellate counsel claim in his Rule 26(B) application.

However, he did argue that his appellate counsel was ineffective in failing to raise arguments on direct appeal regarding admission of the cell phone tower data or the sufficiency of the evidence supporting his convictions. (ECF No. 5-1, Exhibit 21). Again, however, the Sixth Appellate District did not reach the merits of his appellate counsel's effectiveness and instead denied Mr. Williams' Rule 26(B) application as untimely.

It is well-settled that "violation of the timeliness requirements of an application for reopening an appeal . . . constitute[s] an adequate and independent state ground[] to preclude hearing an untimely claim on the merits." *Baker v. Bradshaw*, 495 F. App'x 560, 565 (6th Cir. 2012); *see also Scuba v. Brigano*, 527 F.3d 479, 488 (6th Cir. 2007) (holding that filing deadline of Rule 26(B) constitutes a state procedural rule applicable to the petitioner's claim and that state court application of filing deadline results in procedural default under *Maupin*); *Gomez v. Turner*, No. 3:20-CV-02247, 2023 WL 10147711, at *12 (N.D. Ohio Dec. 29, 2023), *report and recommendation adopted*, 2024 WL 989008 (N.D. Ohio May 7, 2024) ("the state appellate court's denial of the motion to reopen because it was filed outside the ninety-day filing period is an adequate and independent state ground that serves to bar federal habeas review"). Because Mr. Williams failed to raise his claims on direct appeal or comply with the filing deadline for a Rule 26(B) application, and because the Sixth Appellate District enforced the procedural bar by denying his application to reopen as untimely, he has procedurally defaulted on all three grounds for relief.

Mr. Williams' procedural default can be excused if he demonstrates either both cause for the default and actual prejudice or that the failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Mr. Williams argues that his appellate counsel's failure to notify him of the Sixth Appellate District's decision is sufficient

cause to excuse his procedural default. It is true that ineffective assistance of counsel can constitute cause to excuse a procedural default. *See Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013). "However, 'an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted.'" *Id*. (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)). Because Mr. Williams procedurally defaulted on his ineffective assistance of appellate counsel claim by failing to timely raise it in a Rule 26(B) application, he "cannot rely on ineffective assistance of counsel to establish cause to excuse his procedural default." *Id.*

Mr. Williams also briefly argues that the extraordinary nature of the COVID-19 pandemic should excuse his default. "Some courts have found sufficient cause to excuse default when petitioners, who diligently pursued their rights, faced filing delays and limited access to law libraries due to the COVID-19 pandemic." *Black v. Warden, Pickaway Corr. Inst*., No. 2:22-cv-3087, 2023 WL 8811032, at *19 (S.D. Ohio Dec. 20, 2023), *report and recommendation adopted*, 2024 WL 1735073 (S.D. Ohio Apr. 23, 2024). However, "[t]o satisfy cause to excuse procedural default, a petitioner must offer, with specificity, how the COVID-19 pandemic and any related restrictions hindered his ability to timely-file in state court." *Id*.; *see also Redden v. Black*, No. 1:22-CV-00694-BMB, 2023 WL 2482919, at *14 (N.D. Ohio Jan. 6, 2023), *report and recommendation adopted*, 2023 WL 2477567 (N.D. Ohio Mar. 13, 2023) ("To the extent [petitioner] attempts to argue that COVID-19 was the cause for procedural default, he has failed to demonstrate cause and prejudice").

Here, while Mr. Williams asserts generally that the COVID-19 pandemic prevented him from timely complying with state court deadlines, he does not provide any specific information regarding how the pandemic prevented him from doing so. Accordingly, I

conclude that the COVID-19 pandemic does not constitute cause to excuse Mr. Williams'
procedural default. I therefore alternatively recommend that the Court dismiss Mr. Williams'
petition in its entirety because his claims are procedurally defaulted.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A.  **Legal Standard**

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not
appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate
of appealability. The statute further provides that "[a] certificate of appealability may issue .
. . only if the applicant has made a substantial showing of the denial of a constitutional right."
28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a
denial of a constitutional right, the burden on the petitioner is obviously less than the burden
for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the
courts that have considered the issue have concluded that "[a] 'substantial showing' requires
the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court
could resolve the issues (in a different manner); or that the questions are adequate to deserve
encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999)
(quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that
certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District
Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a
certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a),
28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue
or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C.

§ 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)].")." In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B. **Analysis**

Mr. Williams has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VII. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the DISMISS Mr. Williams' petition for a writ of habeas corpus under 28 U.S.C. § 2254. I also recommend that the Court not grant him a certificate of appealability.

Dated: August 16, 2024

*/s/Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.** Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. The**

District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).